UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBORAH FOSS,                          )
                                       )
                    Plaintiff,         )
        v.                             )        CIVIL ACTION
                                       )        NO. 22-10761-JGD
CITY OF NEW BEDFORD and                )
TALLAGE DAVIS, LLC,                    )
                                       )
                    Defendants.        )

## MEMORANDUM OF DECISION AND
## ORDER ON DEFENDANT TALLAGE DAVIS, LLC'S
## <u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>

August 10, 2022

DEIN, U.S.M.J.

### I.        <u>INTRODUCTION</u>

This matter is before the court on "Defendant Tallage Davis, LLC's Motion to Enforce

Settlement Agreement" (Docket No. 23), by which the defendant, Tallage Davis, LLC ("Tallage"),

contends that it reached an enforceable settlement agreement with the plaintiff, Deborah Foss

("Foss"), on June 10, 2022, when Tallage accepted Foss' offer to settle her claims against

Tallage and its co-defendant, the City of New Bedford ("New Bedford" or "City"), for $65,000.

Tallage further contends that the plaintiff's subsequent demand for a higher settlement

amount, approximately one week after the parties had agreed to the $65,000 figure,

constituted a breach of a mutually agreed upon contract.  Accordingly, Tallage is seeking an

order enforcing the parties' $65,000 settlement agreement and directing Foss to reimburse it

for the attorney's fees and costs it incurred in connection with the present motion.

As described below, it is undisputed that Foss agreed to a $65,000 settlement and that she reneged on this agreement following a change of heart regarding the amount she was willing to accept to resolve her claims in this action. However, it is also undisputed that Tallage attempted to include additional terms regarding confidentiality and non-disparagement, which were never accepted or otherwise agreed to by the plaintiff. While this court finds that the plaintiff's decision to renege on the agreed upon settlement amount and abandon the parties' negotiations was regrettable, it is constrained to conclude that the parties failed to reach a binding contract. Therefore, and for all the reasons detailed below, the defendant's motion to enforce a settlement agreement is DENIED.

## II.      FACTUAL BACKGROUND[1]

### Events Leading Up to the Present Litigation

This action arises out of the foreclosure and subsequent sale of Foss's two-family home, which was located at 17-19 Valentine Street in New Bedford, Massachusetts (the "Property"). (Hill Aff. ¶ 3). On June 15, 2015, Foss, acting as trustee of the Valentine Realty Trust, used her life savings and an inheritance received from her mother to purchase the Property for $168,500. (Id. ¶ 4; Def. Ex. A; Foss Decl. ¶ 1). Foss lives on an income of less than $1000 per month. (Foss Decl. ¶ 2). She intended to use that income, along with additional funds that she planned to raise from renting out the upstairs unit of the Property, to pay real estate taxes and other expenses. (Id. ¶ 3). However, soon after purchasing the Property, Foss was faced with

---

[1] The facts are derived from: (1) the Affidavit of Daniel C. Hill (Docket No. 23-1) ("Hill Aff.") and the exhibits attached thereto ("Def. Ex.___"); (2) the Declaration of Deborah D. Foss in Opposition to Motion to Enforce Settlement (Docket No. 29) ("Foss Decl."); and (3) the Declaration of Joshua Polk in Opposition to Motion to Enforce Settlement (Docket No. 30) ("Polk Decl.") and the exhibits attached thereto ("Pl. Ex.___").

unanticipated expenses, including expenses for necessary repairs to the Property, and was also unable to secure rent from her upstairs tenants. (Id. ¶¶ 4-5). Consequently, Foss quickly fell behind on her real estate taxes, and on December 9, 2016, the City executed an Instrument of Taking against the Property, pursuant to Mass. Gen. Laws ch. 60, §§ 53-54, for non-payment of real estate taxes. (Hill Aff. ¶ 5).

On June 4, 2018, the City assigned the tax title securing the taxes and charges on the Property to Tallage in exchange for $9,626.19. (Id. ¶ 6; Def. Ex. C at 1). Tallage paid all remaining real estate taxes that were owed on the Property. (Hill Aff. ¶ 7). It then filed a tax foreclosure action in the Massachusetts Land Court against Foss, as Trustee of the Valentine Realty Trust. (Id. ¶ 8; see also Def. Ex. E). On July 18, 2019, Foss appeared for an initial hearing in the Land Court before Recorder Deborah Patterson. (Hill Aff. ¶ 10). During the hearing, the Recorder explained that under Massachusetts law, a trust may not appear in court without an attorney. (Id.). She further instructed Foss to obtain counsel within three weeks to represent her in her capacity as Trustee, and to have her counsel contact Tallage's attorney. (Id.). No counsel appeared on behalf of the Trust, and on September 25, 2019, the Land Court entered a Judgment of foreclosure in favor of Tallage. (Id. ¶ 11; see also Def. Exs. F-G).

Tallage initiated eviction proceedings against Foss on March 15, 2021, which ultimately resulted in Foss being forced to leave the Property on February 1, 2022. (Foss Decl. ¶¶ 9-10). On March 1, 2022, Tallage sold the Property to a third-party purchaser. (Hill Aff. ¶ 14). The sale price of the Property was $242,000. (Def. Ex. H at 1-2).

Foss was able to obtain pro bono legal representation from the Pacific Legal Foundation ("PLF"), and on March 29, 2022, she filed the instant litigation against Tallage and New Bedford

in Bristol County Superior Court.  (Foss Decl. ¶ 14; Hill Aff. ¶ 15).  The City removed the action

to this court on May 17, 2022.  (Docket No. 1).  By her Complaint in this action, Foss is

challenging the constitutionality of the Massachusetts tax foreclosure system.  (See Docket No.

1-1 ¶ 1).  She has asserted claims against the defendants for violations of the United States

Constitution and the Massachusetts Declaration of Rights, as well as a claim for unjust

enrichment.  (Id. ¶¶ 50-96).

The Parties' Settlement Negotiations

Not long after the matter was removed to this court, Daniel Hill, Esq., an attorney for

Tallage, reached out to plaintiff's counsel to propose a potential settlement of the case.  (Polk

Decl. ¶ 5).  In a letter dated June 3, 2022 to one of Foss's attorneys, Joshua Polk, Esq., Attorney

Hill stated that "Tallage is willing to pay Ms. Foss twenty-five thousand dollars ($25,000) for a

full settlement of all of Ms. Foss' present and future claims against Tallage and the City of New

Bedford arising out of the foreclosure of the Property."  (Def. Ex. I at 3).  Foss's attorneys at PLF,

Attorney Polk and Jonathan Houghton, Esq., responded to Tallage's offer of settlement in a

letter dated June 8, 2022.  (Def. Ex. J).  Therein, plaintiff's counsel informed Attorney Hill that

Foss rejected Tallage's $25,000 settlement offer.  (Id. at 1).  However, they stated that "Ms.

Foss is willing to accept $100,000 for a full settlement of all her present and future claims

against Tallage arising out of the foreclosure" of the Property.  (Id.).

Two days later, on June 10, 2022, Attorney Hill and Attorney Polk spoke at least twice by

telephone in an effort to negotiate a settlement agreement.  (Hill Aff. ¶ 18; Polk Decl. ¶ 6).

Initially, Attorney Polk lowered Foss's settlement demand to $70,000, and Attorney Hill stated

that Tallage would be willing to settle for $60,000.  (Hill Aff. ¶ 18).  Attorney Polk then proposed

[4]

$65,000, and Attorney Hill accepted that offer on behalf of Tallage.  (Id.).  Thus, it is undisputed

that the parties reached agreement on the monetary amount of a settlement.  (See id.; Polk

Decl. ¶ 7).  According to Attorney Hill, Attorney Polk specifically confirmed that Foss had

authorized him to settle the case for $65,000.  (Hill Aff. ¶ 18).

       During the telephone calls between the parties' respective counsel, Attorney Hill

indicated that any final settlement would need to have a confidentiality provision restricting

Foss's and PLF's ability to publicize this case.  (Polk Decl. ¶ 8).  Attorney Polk responded that

while Foss might be willing to consider a confidentiality provision that would be binding on her,

she would not be willing to enter an agreement that would place such limitations on her

counsel or PLF.  (Id. ¶ 9).  Moreover, Attorney Polk emphasized that Foss and PLF would need to

review the specific terms of any proposed confidentiality agreement before Foss would agree

to enter into a settlement contract.  (Id. ¶ 10).  It is undisputed that there was no discussion

regarding the specific terms of any potential confidentiality provision.  (Id. ¶ 14).

       On June 10, 2022, following counsel's telephone conversations, Attorney Hill sent the

following email to Attorney Polk:

> This confirms our conversation this afternoon that Tallage has accepted your
> client's counteroffer to settle the above-referenced litigation for $65,000 paid to
> Ms. Foss upon full execution of a mutually-agreeable settlement agreement.  As
> we discussed, the Agreement must include, among other things, a complete
> dismissal of all claims with prejudice in this action, against all defendants, and
> *must contain confidentiality language and an agreement not to publicize this*
> *case*.  It is agreed that the terms and the existence of this settlement are
> confidential between the parties and the counsel thereto, from this point
> forward.  I will let New Bedford counsel know that there is a settlement is [sic]
> pending.
>
> I will follow up next week with a draft Agreement.

(Def. Ex. K at 1 (emphasis added)).  Later that same day, Attorney Polk responded to Attorney

Hill's email as follows:

> Thank you for following up.  Just to clarify, as we discussed on the phone, Ms.
> Foss is willing to personally be bound by a confidentiality agreement (depending
> on the terms).  However, *PLF will not agree to stop publicly talking about the*
> *case*.  PLF can agree to refrain from discussing the existence and terms of the
> settlement agreement.  But *Deborah [Foss] is unwilling to bind PLF to a broad*
> *confidentiality provision and has no authority to do so*.  Per our conversation, PLF
> might be willing to accept sufficiently specific and narrow terms with regard to
> publicizing the case.
>
> We can hash out the details once we see a draft agreement early next week.
> Thank you.

(Id. (emphasis added)).  Notably, however, Attorney Polk did not attempt to disclaim Foss's

agreement to a $65,000 settlement.  (See id.).

On June 14, 2022, Attorney Hill emailed a draft settlement agreement ("Draft

Agreement") to Attorney Polk.  (Hill Aff. ¶ 22).  The Draft Agreement provided that Tallage

would pay Foss $65,000, and that Foss would dismiss her claims against the defendants in this

action with prejudice.  (Def. Ex. L ¶ 1).  It also contained non-disparagement and confidentiality

provisions that would apply to Foss and any person or entity acting on her behalf, including PLF.

(Id. ¶ 6).  Specifically, as the proposed Agreement read in relevant part:

> 6.      From and after the date hereof, neither Foss, nor any person or
> entity acting on behalf of Foss, including but not limited to legal counsel (e.g.,
> PLF), shall directly or indirectly make (or knowingly permit any of their agents to
> directly or indirectly make) any public or private statement (whether written or
> oral, including any statement made via any type of social media platform or
> other similar communication vehicle) or take any action that disparages,
> denigrates, maligns or criticizes Tallage, or its former, current or potential
> officers, directors, employees, attorneys, partners, members, representatives,
> subsidiaries, affiliates or investors, or its businesses, activities, operations,
> affairs, reputations or prospects (collectively, the "Protected Persons").  For
> purposes of clarification, and not by way of limitation, a statement or action shall
> be deemed to disparage, denigrate, malign or criticize a Protected Person if such

statement or action could be reasonably construed to adversely affect the opinion that any third party may have or form of any such Protected Person. Further, from and after the date hereof, neither Foss, nor any person or entity acting on behalf of Foss, including but not limited to legal counsel (e.g., PLF), shall directly or indirectly engage in any publicity about the taking that was the subject of the Foreclosure Action, the Sale of the Property, the District Court Action, or the Housing Court Action. For purposes of clarification, and not by way of limitation, the term "publicity" is intended to include any statements made to representatives of the news media or social network media, press conferences, press releases, or other forms of written communications intended to be disseminated broadly such as a newsletter, report, website posting, blog post, etc. As a point of further clarification, with regards to legal representatives only, the effects of this paragraph shall be limited to statements and/or publicity related to Foss and/or the Property only.

7.      The existence and terms of this Agreement shall be confidential and shall not be disclosed by either Party, including the Party's family members and legal representatives to any other person or entity, except as may be necessary for procurement of a loan from a financial institution or for tax accounting purposes.

8.      Any violations of paragraphs 6 and/or 7 by Foss, or any person or entity acting on behalf of Foss, shall constitute an Event of Default. Upon receipt of written notice of an Event of Default by Tallage to Foss, individually or through counsel, Foss shall be required to return the sixty-five-thousand dollar ($65,000.00) payment to Tallage within one week.

(Id. ¶¶ 6-8). The Draft Agreement contained no language requiring Tallage to adhere to similar restrictions.

Three days later, on June 17, 2022, co-counsel for Foss, Attorney Houghton, sent an email to the defendant's counsel in which he stated in relevant part as follows:

We have conferred with our client. Please be advised that Tallage's settlement offer and proposed agreement is rejected. *Upon further consideration, the monetary offer in Tallage's proposed draft is insufficient. In addition, Ms. Foss will not agree to the confidentiality and non-disparagement provisions of your proposed Agreement.* If Tallage is willing to increase the money offer and remove the problematic provisions, we are happy to continue our negotiations. Otherwise, we can proceed with the litigation of this matter. I also note that your representation that 'we have reached a settlement' is incorrect and contrary to previous conversations in which you were specifically informed that

[7]

the confidentiality provisions would pose problems and that Ms. Foss would
have to see the full terms before making any agreement.

(Def. Ex. N at 1-2 (emphasis added)).  Foss has admitted that she no longer wished to settle for

$65,000 because the amount was insufficient for her to secure permanent living arrangements,

but she also maintains that the confidentiality and non-disparagement provisions were overly

broad and unacceptable.  (Foss Decl. ¶ 16).

Thereafter, Tallage asserted that the parties had "already reached an agreement on all

substantive terms" on June 10, 2022, when the defendant accepted Foss's $65,000 settlement

proposal, and that it intended to file a motion to enforce the parties' settlement.  (See Hill Aff.

¶18; Def. Ex. O at 1).  Foss disagreed that the parties had reached agreement on all material

terms of a settlement or entered into any binding contract.  (Def. Ex. O at 1; Pl. Ex. A at 1).  On

June 30, 2022, following some additional communications in which counsel for the parties

argued their respective positions, Tallage filed the instant motion to enforce a settlement

agreement.  (See Pl. Ex. C at 1-4).

Additional factual details relevant to this court's analysis are set forth below where

appropriate.

## III.  DISCUSSION

### A.  Standard of Review

The fundamental issue raised by Tallage's motion is whether the parties reached an

enforceable settlement agreement.  "The court has 'an inherent power to supervise and

enforce settlement agreements entered into by parties to an action pending before the

court.'"  D'Agostino v. Fed. Ins. Co., 969 F. Supp. 2d 116, 126 (D. Mass. 2013) (quoting Dankese

v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982)).  "Thus, a party to a settlement

agreement may seek to enforce the agreement's terms when the other party refuses to

comply."  Fid. & Guar. Ins. C. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008).  Where, as here,

the material facts are not in dispute, it is up to the court to determine whether a binding

agreement has been reached.  See Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 140 (D. Mass.

2009) ("Whether a purported contract contains the necessary elements for enforceability is

(ordinarily) a question of law reserved for the court.").  In cases such as this one, where "the

underlying cause of action is federal in nature[,]" a motion to enforce a settlement agreement

"is determined in accordance with federal law."  Malave v. Carney Hosp., 170 F.3d 217, 220 (1st

Cir. 1999).  The party seeking to enforce a settlement agreement – in this case, Tallage – "bears

the burden of 'proving the existence of a contract.'"  United States ex rel. Allen v. Alere Home

Monitoring, Inc., 355 F. Supp. 3d 18, 24 (D. Mass. 2019) (quoting Moore, 639 F. Supp. 2d at

140)).

   "A settlement agreement is a contract that is interpreted according to general principles

of contract law.  Once entered into, the contract is binding and conclusive."  Powell v.

Omnicom, 497 F.3d 124, 128 (2d Cir. 2007).  However, "before enforcing settlement, the district

court must conclude that agreement has been reached on all material terms."  Therma-Scan,

Inc. v. Thermoscan, Inc., 217 F.3d 414, 419 (6th Cir. 2000) (quoting Brock v. Scheuner Corp., 841

F.2d 151, 154 (6th Cir. 1988)).  "Parties do not become contractually bound until they mutually

assent to bind themselves to an agreement."  United States ex rel. Allen, 355 F. Supp. 3d at 24

(quoting Salem Laundry Co. v. New Eng. Teamsters & Trucking Indus. Pension Fund, 829 F.2d

278, 280 (1st Cir. 1987)).  Therefore, "the district court only retains the power to enforce

*complete* settlement agreements; it does not have the power to sit as a final arbiter and impose a settlement agreement where there was never a meeting of the parties' minds." Stewart v. Coyne Textile Servs., 96 Fed. Appx. 887, 888 (4th Cir. 2004). "Where there has been no meeting of the minds sufficient to form a complete settlement agreement, ... the case must be restored to the docket for trial." Id. at 888-89. Applying these principles to the instant case compels the conclusion that there is no enforceable settlement agreement between Foss and Tallage, and that Tallage's motion to enforce an agreement must be denied.

**B. Failure to Reach Agreement on All Material Terms**

Tallage argues that the parties entered into a binding and enforceable settlement agreement during the June 10, 2022 telephone conversations between counsel, when Tallage agreed to Foss's counteroffer to settle the litigation for $65,000. (Def. Mot. (Docket No. 23) at 1, 8-9). There is no question that under federal law, "[p]arties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." Powell, 497 F.3d at 129. See also United States ex rel. Allen, 355 F. Supp. 3d at 24 ("Even when the parties to an agreement contemplate a written document, there can still be an enforceable agreement before the document is executed."). Such a "settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." Powell, 497 F.3d at 129. In the instant case, it is undisputed that during counsel's discussions on June 10, 2022, Attorney Hill accepted Attorney Polk's offer to settle this case for $65,000. (Hill Aff. ¶ 18; Polk Decl. ¶ 7). It is also undisputed that Attorney Polk was acting on Foss's authority when he offered to settle the matter for the agreed upon amount. (Hill Aff. ¶ 18). The record further demonstrates that

despite Attorney Polk's representation that the parties could "hash out the details" of a written settlement agreement once the plaintiff had an opportunity to review a draft agreement, Foss subsequently changed her mind and decided that the "monetary offer [of $65,000] in Tallage's proposed draft [was] insufficient."  (See Def. Ex. K; Def. Ex. N at 1-2).  Nevertheless, this court finds that no binding settlement occurred because the parties failed to reach an agreement on all material terms.

Significantly, during the conversations on June 10, 2022, counsel for Tallage stated that any final agreement would need to contain a confidentiality provision restricting both Foss's and PLF's ability to publicize the case.  (Polk Decl. ¶ 8).  Although Foss's counsel replied that Foss might be willing to consider such a provision, he emphasized that she would not agree to impose any such obligations on PLF, and that Foss and her counsel would need to review the specific terms of a proposed confidentiality provision before Foss would agree to enter into a settlement contract.  (Id. ¶¶ 9-10).  It is undisputed that there were no further discussions regarding the specific terms of a confidentiality provision, and that the parties never reached an agreement on that issue.  (See id. ¶ 14; Def. Ex. N at 1-2).  Consequently, the parties never came to an agreement on all material terms of a settlement, and there was "no meeting of the minds sufficient to form a complete settlement agreement[.]"  Stewart, 96 Fed. Appx. at 888.

Tallage argues that this court nevertheless has the power to enforce the parties' monetary agreement because the issue of confidentiality was "subsidiary" and because "Ms. Foss cannot plausibly suggest that the unresolved 'publicity' term was critical to her so as to constitute an unresolved material term of the settlement."  (Def. Mot. at 9-10).  This court disagrees.  A term or provision is "material" if it is "an 'essential and inducing feature of the

contract[.]'" D'Agostino, 969 F. Supp. 2d at 130 (quoting Bucholz v. Gree Bros. Co., 272 Mass. 49, 52, 172 N.E. 101, 102 (1930)).  Here, there can be no question that the issue of confidentiality was essential to both parties to the litigation.  During counsel's discussion on June 10, 2022, Attorney Hill conveyed Tallage's position that a mutually agreeable settlement "*must* contain confidentiality language and an agreement not to publicize this case."  (Def. Ex. K at 1 (emphasis added); see also Polk Decl. ¶ 8).  He reiterated this requirement in his June 10, 2022 follow up email to Attorney Polk, and sent Foss a Draft Agreement containing a sweepingly broad confidentiality/non-disparagement provision that restricted Foss's and her attorneys' ability to publicize this case and the events leading up to it.  (See Def. Ex. K at 1; Def. Ex. L ¶ 6).  Thus, the record illustrates the essential nature of this issue to Tallage and belies its effort to minimize the importance of a confidentiality provision by characterizing it as a "subsidiary" matter.  See United States ex rel. Allen, 355 F. Supp. 3d at 24 (explaining that courts determine whether parties mutually assent to bind themselves to a settlement agreement "not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do."  (quoting Salem Laundry Co., 829 F.2d at 280)).

The record demonstrates that the issue of confidentiality was equally important to the plaintiff.  During his June 10, 2022 discussion with Attorney Hill, Attorney Polk conveyed his client's position that she would not accept a provision that would silence her attorneys and PLF, and that both the plaintiff and her counsel would need to see the specific terms of a proposed confidentiality provision before she would agree to a settlement contract.  (Polk Decl. ¶¶ 9-10).  Similarly, in response to Attorney Hill's email following up on counsels' discussions, Attorney Polk indicated that while there might be room for compromise and the parties could "hash out

the details" once a draft settlement agreement was available, Foss was "unwilling to bind PLF

to a broad confidentiality provision and has no authority to do so." (Pl. Ex. A at 8). Following

PLF's review of the Draft Agreement from Tallage, Attorney Houghton informed the defendant

that Foss would "not agree to the confidentiality and non-disparagement provisions" contained

therein and would not continue negotiations unless Tallage agreed to increase the settlement

amount "and remove the problematic provisions[.]" (Id. at 2). Therefore, the undisputed facts

illustrate that confidentiality was material to any settlement agreement.

The record further reveals that Tallage's effort to restrict PLF's ability to publicize the

litigation was especially significant given the nature of PLF's legal practice and Foss's interest in

publicizing the circumstances of her housing predicament. According to Attorney Polk, part of

PLF's mission is "to end predatory tax foreclosure laws that allow government or its private

partners to take homes and all equity in those homes as payment for smaller debts." (Polk

Decl. ¶ 2). PLF and Foss maintain that the proposed confidentiality and non-disparagement

provisions would limit their ability to persuade the public and policymakers to protect indebted

homeowners from predatory tax foreclosures by keeping them from using Foss's story to

promote their broader interests. (See id.¶ 23; Foss Decl. ¶¶ 18-19). Accordingly, this court is

compelled to conclude that the parties never reached agreement on all essential terms of a

contract and that Tallage's motion to enforce a settlement agreement must be denied.

**C. Tallage's Request for Attorney's Fees and Costs**

Tallage has also requested reimbursement of the attorney's fees and costs it incurred in

connection with its motion. Specifically, Tallage argues that it is entitled to those costs and fees

because Foss had no basis to repudiate the parties' settlement agreement, and her efforts to

extract more than $65,000 was done in bad faith.  (Def. Mot. at 10-11).  The defendant's motion is denied with respect to this request as well.

"[A] court possesses inherent powers to award attorneys' fees against a party that 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Mullane v. Chambers, 333 F.3d 322, 337-38 (1st Cir. 2003) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27, 45 (1991)). However, the First Circuit has cautioned that inherent powers "should be used sparingly and reserved for egregious circumstances[.]"  Id. at 338 (citing Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995)) (additional quotations and citation omitted).  Because there was no binding settlement agreement, Foss's conduct was not egregious and does not support the imposition of attorney's fees and costs.

The plaintiff's decision to renege on her offer to settle the matter for $65,000 instead of engaging in further negotiations aimed at achieving a mutually acceptable agreement, while disappointing, is also insufficient to justify an award of costs and fees.  Tallage does not argue, and there is no evidence to show, that Foss entered into an agreement to negotiate in good faith.  Compare Butler v. Balolia, 736 F.3d 609, 618 (1st Cir. 2013) (vacating dismissal of claim for breach of the implied covenant of good faith and fair dealing where plaintiff alleged the existence of a contract to negotiate).  Consequently, Tallage has not shown that Foss's actions constituted bad faith, and its request for an award of costs and attorney's fees is denied.

[14]

## IV.  <u>ORDER</u>

For all the reasons detailed herein, "Defendant Tallage Davis, LLC's Motion to Enforce

Settlement Agreement" (Docket No. 23) is DENIED.


<u>/ s / Judith Gail Dein</u>
Judith Gail Dein
United States Magistrate Judge